## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| DR. PHILLIP A. KIVER, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 23-3398-BAH |
| FEDERAL BUSINESS COUNSEL, INC., | * | |
| Defendant. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Dr. Phillip A. Kiver ("Plaintiff" or "Dr. Kiver") filed this lawsuit against his former employer, the Federal Business Counsel, Inc. ("FBC" or "Defendant"), raising three state law claims alleging retaliation in violation of the Maryland Fair Employment Practices Act, Md. Code, State Gov't § 20-606(a) ("MFEPA").  ECF 2 (Complaint), at 7-9.[1]  Specifically, Plaintiff alleges Sex, Sexual Orientation, and Gender Identity Discrimination (Count 1), Retaliation (Count 2), and Hostile Work Environment (Count 3).  *Id.*  Pending before the Court is Defendant's motion to dismiss (ECF 4), which is supported by a memorandum of law (ECF 4-1).  Plaintiff filed an opposition (ECF 9), which is also supported by a memorandum of law (ECF 9-1).   Defendant filed a reply.  ECF 10.  The Court has reviewed all relevant filings and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).   Accordingly, for the reasons stated below, Defendant's motion to dismiss, ECF 4, is **GRANTED in part and DENIED in part.**

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

## I.     **FACTUAL BACKGROUND**

Defendant, a company whose principal office is in Columbia, Maryland, "specializes in producing meetings, conferences, and trade show events" for agencies of the federal government. ECF 2, at 2 ¶ 3.[2]  Plaintiff, now a resident of North Carolina, began working for Defendant on August 6, 2021.  *Id.* at 3 ¶ 8.  Plaintiff was hired to "provide strategic economic insights on government contracts and to recruit small businesses and government contractors."  *Id.*  Plaintiff's supervisors were David Powell (Chief Executive Officer), Bob Jeffers (Supervisor), and Cindy Carrol (Human Resources Manager).  *Id.*

Plaintiff alleges that "Plaintiff's sexuality, appearance, and gender identity are fluid, and during his employment with FBC, Plaintiff began growing his hair, losing weight, and eating an estrogen-laden diet, to make his appearance more feminine."  *Id.* ¶ 9.[3]  "At no time," Plaintiff alleges, "did [he] discuss his sexuality, sexual preferences, or gender identity with anyone at FBC." *Id.*

Plaintiff details multiple incidents of alleged discriminatory behavior that ultimately led to this litigation.  The first occurred on May 5, 2022, when Mr. Powell allegedly remarked that Plaintiff had "lost a lot of weight."  *Id.* ¶ 10.  Plaintiff alleges that "Mr. Powell's phrasing, tone, and word choice caused [Plaintiff] to feel embarrassed and self-conscious for the remainder of the day."  *Id.*  The next alleged event occurred on June 15, 2022, when Plaintiff reported for work at a convention in Washington, D.C., wearing "bright blue and green shoes, black gym shorts, and a bright fuchsia t-shirt."  *Id.* ¶ 11.  Mr. Jeffers, upon observing Plaintiff's attire, allegedly told

---

[2] The facts in this section are taken entirely from Plaintiff's complaint, ECF 2, which are assumed to be true and viewed in the light most favorable to Plaintiff.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[3] Dr. Kiver uses male pronouns to refer to himself throughout his complaint and subsequent filings, and thus the Court will do the same.

Plaintiff, "I can see you a mile away, we need to talk about your wardrobe." *Id.*  This incident also caused Plaintiff to feel "embarrassed and self-conscious," generated "anxiety," and "distract[ed Plaintiff] from his work duties." *Id.* ¶¶ 10–11.  Also on June 15, 2022, Plaintiff showed Mr. Jeffers a photograph of a new handgun Plaintiff had recently purchased. *Id.* at 4 ¶ 12.  The new weapon had a "purple upper receiver." *Id.*  Upon viewing the picture, Mr. Jeffers remarked that the gun "would be great to carry in the gay pride parade outside." *Id.*  Plaintiff claims the remark caused Plaintiff to feel "attacked and harassed," and it caused additional embarrassment because the remark was "loud and [uttered] within earshot of Plaintiff's peers." *Id.*  That same day, Plaintiff alleges that Mr. Powell's wife made a remark "implying that Dr. Kiver was thinking of wearing dresses" on an upcoming work-related trip to Hawaii. *Id.*

Plaintiff further alleges that after he declined to accept the weekend accommodations arranged by FBC before a work event in Hawaii, Ms. Carrol "insisted and demanded" to "know where Plaintiff would be 'sleeping' and 'showering'" for the weekend. *Id.* at 4 ¶ 13.  Plaintiff allegedly "felt harassed and targeted" by these remarks. *Id.*  Later, as Mr. Powell was helping Plaintiff to check in to Plaintiff's hotel, the Stay Hotel Waikiki (the "Stay Hotel"), Mr. Powell "began making stereotypical, suggestive, and degrading remarks about the hotel 'being gay' and the type of people one can expect to encounter at the hotel." *Id.* at 4–5 ¶ 14.  According to Plaintiff, the Stay Hotel is "well known for its famous gay bar," which Plaintiff believes was the reason Mr. Powell chose to book Plaintiff's accommodations at that hotel despite there being "other available hotels in close vicinity."[4] *Id.*  According to Plaintiff, additional incidents of alleged harassment and discrimination occurred in Hawaii:

---

[4] The rest of the "FBC team" was staying at "the Marriott hotel."  ECF 2, at 4–5 ¶ 14.  Plaintiff was told by Mr. Powell that the Marriott "had no vacancies," thus requiring Plaintiff to stay elsewhere. *Id.*  Plaintiff does not appear to take issue with Mr. Powell's claim that the Marriott

- On June 27, 2022, Plaintiff was told by Mr. Powell to change from "cargo shorts" into "pants." ECF 5, at ¶ 15. When Plaintiff returned quickly from getting changed, Mr. Powell remarked that "[m]en in the elevator must have helped [Plaintiff] get undressed," which caused Plaintiff's peers to laugh and comment about "the gay hotel where Plaintiff stayed." *Id.*

- Also on June 27, 2022, while traveling with Mr. Powell and Ms. Carroll, Mr. Powell's daughter "began a conversation about 'gay parties'" she had attended while in college. *Id.* ¶ 16. When Plaintiff asked how "anyone would know if those in attendance [at the parties] were gay," Mr. Powell replied, "With your phone case they would let [Plaintiff] in with no problem," an apparent reference to Plaintiff's "pink bedazzled phone case." *Id.* Ms. Carroll then said, "I can tell if someone is gay just by looking at them," and remarked that she could not "picture [Plaintiff] as a college professor" after being told by Mr. Powell that Plaintiff "is a Ph.D. and college professor." *Id.*

- While with the "FBC team," Plaintiff was "repeatedly asked by co-workers" if he patronized the "'gay bar' at [Plaintiff's] 'gay hotel.'" *Id.* at 6 ¶ 17.

- On Wednesday, June 29, 2022, Plaintiff "complained and protested" to Mr. Powell "about the way [Plaintiff] had been treated by Mr. Powell and Ms. Carroll." *Id.* ¶ 18. Mr. Powell allegedly responded by saying, "I am sorry that you feel this way." *Id.*

- On June 30, 2022, Plaintiff had arranged to "go out for drinks" with an "FBC female vendor named Ryan." *Id.* ¶ 19. Plaintiff claims that "Mr. Powell made remarks to Plaintiff about not getting into any sort of 'sexual trouble,'" and alleges that "when Mr. Powell saw Ryan, Mr. Powell reacted with surprise." *Id.* This gave Plaintiff "the impression that Mr. Powell thought Ryan was a male, and she was in fact a female." *Id.*

- On June 30, 2022, Plaintiff was excluded from an FBC team dinner. *Id.* ¶ 20. That same day, when Ms. Carroll saw Plaintiff dressed for the return trip, she "embarrassed and humiliated" him by remarking, "What, are you going swimming right now? Those shorts are too much." *Id.*

Upon returning from Hawaii, in early July 2022, Plaintiff had a conference call with Mr. Jeffers and Mr. Powell "to discuss how the work had gone in Hawaii." *Id.* ¶ 21. During the call, Plaintiff asked "if Mr. Powell had addressed Plaintiff's concerns that Plaintiff raised with Mr. Powell about the harassing treatment Plaintiff felt he was receiving." *Id.* "Mr. Powell said that he

---

was full, but he does allege that the decision to place him at the Stay Hotel, as opposed to another hotel in the area, amounted to discrimination. *Id.*

had done so, and the matter was closed." *Id.* at 6–7 ¶ 21.  On August 4, 2022, Plaintiff was terminated by Mr. Powell, "allegedly because Plaintiff had been slandering a previous employer in the same industry as Defendant." *Id.* at 7 ¶ 21.

"On or about October 14, 2022, Plaintiff filed a Charge of Discrimination against Defendant with the Maryland Commission on Civil Rights ('MCCR')." *Id.* at 2 ¶ 7.  "On May 16[,] 2023[,] Plaintiff requested that the MCCR issue Plaintiff a Right [t]o Sue letter." *Id.*  On October 20, 2023, Plaintiff filed suit in Circuit Court for Howard County.  ECF 2, at 1.  Defendant removed the matter to this court on December 15, 2023, alleging diversity jurisdiction under 28 U.S.C. § 1332(A).  ECF 1, at 2.  Defendant's Motion to Dismiss followed on December 22, 2023.  ECF 4, at 1.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted."  In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's]

claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III.   ANALYSIS

### A.   Count 1 is dismissed.

Count 1 alleges that Defendant violated MFEPA when it discriminated against (and ultimately terminated) Plaintiff because of his "sex, sexual orientation, and gender identity." ECF 2, at 7 ¶¶ 23–28.   MFEPA provides that "[a]n employer may not . . . discharge[] or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment because of . . . the individual's . . . sex, . . . sexual orientation, [or] gender identity."   Md. Code, State Gov't § 20-606(a)(1)(i).   MFEPA "is the state law analogue to Title VII of the Civil Rights Act of 1964."[5]   *Alexander v. Marriott Int'l, Inc.*, No. RWT-09-2402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011).

At this early stage of the case, Plaintiff need not allege "specific facts establishing a prima facie case of discrimination under the framework set forth' in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."   *Westmoreland v. Prince George's Cnty.*, No. 09-2453, 2010 WL 3369169,

---

[5] Though Plaintiff's Complaint states an intention to "redress intentional violations by [Defendant] of rights secured to him by the laws of the United States and the State of Maryland," ECF 2, at 1 ¶ 1, Plaintiff raises no claims under federal law.   *See* ECF 2, at 7–9 ¶¶ 23–38.   However, courts "look to federal interpretation of Title VII as relevant authority when interpreting [M]FEPA."   *Richards v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, 2020 WL 639424, at *3 (Md. App. Feb. 11, 2020).   Here, both parties cite almost exclusively to Title VII standards throughout their filings. *See* ECF 4-1, at 4 n.2 (explaining that Defendants rely upon Title VII case law in their brief because it is analogous to MFEPA); ECF 9, at 4 (laying out the elements of discrimination under Title VII in Plaintiff's brief).   Since neither party seeks to discern a meaningful difference in the interpretation of the relevant state and federal law, the Court will apply the federal standard to Plaintiff's claims.   *See Linton v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, Civ. No. JKB-10-276, 2011 WL 4549177, at *4 (D. Md. Sept. 28, 2011) ("This Court has [ ] previously applied Title VII case law in adjudicating [M]FEPA claims . . . .   The parties in this case have not alerted the Court to any applicable differences . . . [and] [t]he Court will therefore apply federal standards to both.").

at *3 (D. Md. Aug. 23, 2010) (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002)). But though a plaintiff need not establish a prima facie case at the motion to dismiss stage, "reference to the elements of a claim is helpful to assess whether the plaintiff has stated a plausible claim." *Allgaier v. Microbiologics, Inc.*, Civ. No. 22-01900-ELH, 2023 WL 2837336, at *8 (D. Md. Apr. 7, 2023).   A prima facie case of discrimination under Title VII (and MFEPA) requires a plaintiff to demonstrate "(1) his membership in a protected class; (2) his satisfactory job performance; (3) an adverse employment action; and (4) similarly situated employees outside the protected class who received more favorable treatment." *Tabb v. Bd. of Educ. of Durham Pub. Sch.*, 29 F.4th 148, 157 (4th Cir. 2022).   The Court's inquiry at the motion to dismiss stage is limited to whether Plaintiff "alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 617 (4th Cir. 2020) (*citing Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).

Here, Plaintiff alleges that he "is a member of a protected class based on sex and gender identity" and notes that he is "gender fluid in his identity and lives as a male or female."  ECF 2, at 7 ¶ 24.  He alleges that "in all respects, [he] performed his job in a manner that was consistent with [Defendant's] legitimate business expectations."  *Id.* ¶ 25.  Plaintiff further claims that Defendant discriminated against him and fired him "due to his sex, sexual orientation, and gender identity."  *Id.* ¶ 26.  Plaintiff also claims that due to the alleged harassment he suffered at work, and his subsequent termination resulted in "humiliation, degradation, emotional distress, other consequential damages, and lost income."  *Id.* ¶ 28.

Defendants appear to concede that Plaintiff has alleged facts sufficient to establish the first and third elements of a discrimination claim, namely that Plaintiff is a member of a protected class (gender fluid) and suffered an adverse employment action (termination).   *See* ECF 4-1, at 5

("Kiver fails to allege facts sufficient to support either the third or fourth element of this *prima facie* case, and thus fails to state a claim of discrimination above the speculative level."). Defendant argues, however, that Plaintiff has failed to "plausibly" allege "that his job performance was satisfactory." ECF 4-1, at 5. Defendant also asserts that Plaintiff has failed to plead disparate due to his sexual orientation or gender identity because, "based on [Plaintiff's] own admission, . . . no one at FBC knew about [Plaintiff's] sexuality, sexual preference or gender identity." *Id.* at 6. Finally, Defendant argues dismissal is required because Plaintiff "does not assert any other facts in his Complaint that suggest[] that FBC terminated him 'because of' his sex, sexual orientation or gender identity." *Id.* The Court will address each of these arguments in turn.

   1. *Plaintiff has pled that he was satisfactorily performing his job.*

  As to the claim that Plaintiff has failed to establish that his job performance was satisfactory, Defendant is correct that the Complaint includes no explicit factual allegations to support the claim that Plaintiff was performing his work at a satisfactory level. For example, there is no claim that he received favorable performance reviews. *See Rorie v. Bd. of Educ. of Charles Cnty.*, 653 F. Supp. 3d 217, 231 (D. Md. 2023) (finding that positive performance reviews lent support to argument that plaintiff had met employer's expectations); *Kikwebati v. Strayer Univ. Corp.*, Civ. No. 14-203, 2014 WL 7692396, at *8 (E.D. Va. Oct. 21, 2014) ("The allegations regarding 'commendable' audits suggest that [Defendant] itself viewed Plaintiff's performance as Campus Dean to be satisfactory and to meet its expectations."). The only explicit claim that Plaintiff's performance was satisfactory comes in a conclusory legal assertion that, "at all times," Plaintiff "performed his job in a manner that was consistent with FBC's legitimate business expectations." ECF 2, at 7. A "conclusory statement of this kind is not sufficient to state a claim for disparate treatment." *Bynum v. Martin*, Civ. No. GJH-16-2067, 2016 WL 7468050, at *5 (D. Md. Dec. 27, 2016).

Plaintiff counters that Defendant's invitation to travel to Hawaii would not have been extended unless he was performing his job adequately.  ECF 9, at 6.  However, Plaintiff also appears to suggest that everyone who worked at FBC was invited to Hawaii, thus diminishing the probative value of his inclusion as it relates to his overall job performance.  ECF 2, at 4 ¶ 13 (noting that Plaintiff "was assigned or scheduled with *the FBC team* for a working trip in Oahu, Hawaii") (emphasis added).  It is difficult from the face of the Complaint to determine whether Plaintiff's invitation to Hawaii represents the proverbial "vote of confidence" he claims it does.  Regardless, the Complaint includes several references to Plaintiff performing his job duties prior to the Hawaii trip, once on an apparent trip to Georgia.  *See* ECF 2, at 3 ¶ 10 (noting that Plaintiff worked "at an FBC event in Fort Gordon, Georgia" and at another event "at the Washington DC Convention Center").  That Plaintiff was invited to provide services at numerous out-of-state events, at least two of which were a considerable distance from Defendant's home base, provides just enough support to plausibly state a claim that Plaintiff was satisfactorily performing his job responsibilities at the time of his termination.[6]

> 2.   *Plaintiff has pled that he was a member of a protected class, but he has failed to plead that he was terminated because of his membership in that class.*

The second issue raised by Defendant is a closer call.  Specifically, Defendant alleges that it could not have discriminated against Plaintiff because, by Plaintiff's own admission, Defendant

---

[6] Defendant argues in its Reply that even if the Hawaii trip provided a basis to infer Plaintiff performed his duties satisfactorily, it fails to show that he performed his job at the time of his termination.  *See* ECF 10, at 3 ("However, at best this implies that Kiver's job performance was satisfactory as of the time of the trip months prior to his termination—it does not, however, imply that his job performance was satisfactory *at the time of* his termination months later.") (emphasis in original).  However, Plaintiff was terminated just over a month after returning from Hawaii.  ECF 2, at 7 ¶ 22.  This temporal proximity is adequate to establish satisfactory performance at the time of his termination.  *See Kikwebati,* 2014 WL 7692396, at *3 (finding that evidence of positive performance in October of 2013 was sufficient to establish, at the pleading stage, that Plaintiff was meeting his employer's expectations when he was terminated on November 11, 2013).

was not aware that Plaintiff was a member of a protected class.  ECF 4, at 6.  Plaintiff counters

that the facts alleged "show that Mr. Powell, Mr. Jeffers and Ms. Carroll made statements, remarks,

or took actions in relation to Plaintiff based on their belief, assumption, or presumption that

Plaintiff was 'gay' and when Dr. Kiver pushed backed against these actions animus and tensions

arose leading to his firing."  ECF 9, at 7.

It bears repeating that Dr. Kiver alleges in his Complaint that he was generally subject to

discrimination based on his "his sex, sexual orientation, and gender identity."  ECF 2, at 7 ¶ 26.

However, as to Count 1, he alleges membership in a protected class delineated only by his "sex

and gender identity," *id.* at 7 ¶ 24, and later argues in response to Defendant's Motion that he was

terminated only because of his sexual *orientation*,  ECF 9, at 7.  Indeed, the bulk of Plaintiff's

factual allegations reference alleged incidents where perceived discrimination related more to

sexual orientation, and less, if at all, to gender fluidity.[7]  Regardless, MFEPA clearly prohibits

both types of discrimination.  *See* Md. Code Ann., State Gov't § 20-606 (a)(1)(i) (prohibiting

discrimination based on "the individual's . . . sexual orientation [or] gender identity"); *see also*

*Doe v. Cath. Relief Servs.*, 484 Md. 640, 657, 300 A.3d 116, 126 (2023) (confirming that the

Maryland General Assembly, "in 2001 and 2014, updated MFEPA to protect against first sexual

orientation and then gender identity discrimination").  Further, the Supreme Court has held that an

---

[7] The Court is not blind to the intersection between sexual orientation and gender identity, nor to the complexities of attempting to impose a framework of sexual orientation that was developed based largely upon the experiences of cisgender people upon people whose identities exist outside of the gender binary.  The law, however, is slow to adapt to new understandings of gender and sexuality, and still by and large treats gender identity as a distinct issue from sexuality.  *See* A. Russell, *Bostock v. Clayton County: The Implications of A Binary Bias*, 106 Cornell L. Rev. 1601, 1612–17 (2021) (exploring how the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), though groundbreaking in terms of its treatment of homosexual sexuality and male-to-female and female-to-male transgender individuals, failed to account for the experiences of non-binary, gender fluid, and gender nonconforming people).

employer violates Title VII's prohibition on sex discrimination when it terminates an employee based on that employee's sexual orientation or gender identity. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1737 (2020) ("An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex."). Thus, Plaintiff is a member of a protected class regardless because Title VII (and MFEPA) protections extend "with equal force to discrimination based on sexual orientation or gender identity." *Diaz v. RM Contractor, LLC*, Civ. No. 21-1192, 2022 WL 2980892, at *4 (E.D. Va. June 17, 2022), *report and recommendation adopted*, Civ. No. 21-01192, 2022 WL 2975301 (E.D. Va. July 27, 2022). Given the low bar at the pleading stage, Dr. Kiver has adequately plead that he is a member of a protected class. However, for the reasons that follow, dismissal of Count 1 is nonetheless appropriate because the Complaint fails to sufficiently plead that Dr. Kiver was terminated *because* of his membership in a protected class.

The Complaint is clear that it was Mr. Powell who terminated Plaintiff and Mr. Powell alone who is alleged to have initiated an adverse employment action.[8]  ECF 2, at 7 ¶ 22 ("On Thursday, August 4, 2022, Plaintiff was fired by Mr. Powell, allegedly because Plaintiff had been slandering a previous employer in the same industry as Defendant.").  A number of the alleged discriminatory comments cited in the Complaint were uttered by persons other than Mr. Powell, and "[e]mployers are not vicariously liable for all of their subordinate employees' discriminatory

---

[8] Though Plaintiff's recitation of facts arguably seeks to package each derogatory statement as an adverse employment action, the paragraphs of the Complaint detailing Count 1 (and Plaintiff's Response to the Motion to Dismiss) make clear that the adverse employment action underlying Count 1 is Plaintiff's termination. *See* ECF 2, at 7 (noting the only explicit act of discrimination to be the "firing [of] Dr. Kiver"); ECF 9-1, at 6 (Dr. Kiver's push back against their actions, along with the proximity in time to Dr. Kiver's firing is sufficient to show Dr. Kiver' s sex, sexual preference or gender identity played a role in Mr. Powell's decision to fire Dr. Kiver.").

actions." [9]  *Bandy v. City of Salem*, 59 F.4th 705, 710 (4th Cir. 2023) (*citing Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 287 (4th Cir. 2004) (en banc), *abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)); s*ee also Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 300 (4th Cir. 2010) ("We must of course be cautious about attributing to any ultimate decision maker . . . the most unfortunate expressions and beliefs of those around him and those who worked in his employ.").  "Instead, employers are responsible only for acts of the 'actual decisionmaker' behind an adverse employment action, meaning the individual who 'was the one "principally responsible" for . . . the action.'"  *Bandy*, 59 F.4th at 710 (citing *Hill*, 354 F. 3d. at 288–89).  Accordingly, for the first count to survive, Plaintiff must "allege sufficient facts to show that" *Mr. Powell* "terminated [Plaintiff's] employment" because of Plaintiff's membership in a protected class.  *Ramos v. Molina Healthcare, Inc.*, 603 F. App'x 173, 178 (4th Cir. 2015) (citing *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190–91 (4th Cir. 2010)).  This Plaintiff has failed to do.

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *Gaines v. Baltimore Police Dep't*, 657 F. Supp. 3d 708, 730

---

[9] Specifically, Plaintiff alleges comments made by Mr. Jeffers, Mr. Powell's wife, Ms. Carrol, and other unnamed members of the FBC staff.    *See* ECF 2, at 3–6 ¶¶ 10–20.  Plaintiff has made no allegation that the so-called "cat's paw theory of liability" is applicable here.  *See Staub v. Proctor Hosp.*, 562 U.S. 411, 415 (2011).  In other words, there is no claim that the discriminatory animus of other people influenced the ultimate decisionmaker—here, Mr. Powell—to take the challenged adverse employment action.  *See Lim v. Azar*, 310 F. Supp. 3d 588, 602 (D. Md. 2018) (noting that "a supervisor's discriminatory animus may support liability only if the supervisor was, in effect, 'principally responsible for, or the actual decisionmaker behind, the action,' such as when the formal decisionmaker simply rubberstamped the supervisor's recommendation.") (citing *Hill*, 354 F.3d at 291).

(D. Md. 2023) (citing *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)). As such, the Court will proceed as though the comments alleged in the Complaint to have been made by Mr. Powell were, in fact, made by him, and will similarly assume, as Plaintiff alleges, that each comment was derogatory toward a protected class.

Though termination is unquestionably an adverse employment action, Plaintiff fails to offer more than the bare conclusion that he was fired due to his protected class. As noted, to be actionable under MFEPA, the adverse action must have "occurred under circumstances that raise a reasonable inference of unlawful discrimination, including because the employer left open the position or replaced the plaintiff with someone outside the protected class." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 650 (4th Cir. 2021) (citations omitted). There is no allegation that the position was filled by anyone outside of Plaintiff's protected classes, and similarly no claim that the job remained open. Plaintiff pleads no additional facts about the position beyond providing Defendant's non-objectionable explanation that Plaintiff was terminated "because Plaintiff had been slandering a previous employer in the same industry as Defendant." ECF 2, at 7.

Plaintiff asserts that the connection between his protected class and his termination is established by the animus Mr. Powell displayed toward Plaintiff's protected classes as alleged in the Complaint. This animus, Plaintiff asserts, revealed itself through Mr. Powell's booking of Plaintiff at a hotel with a "gay bar" in the lobby and then "making stereotypical, suggestive, and degrading remarks about" the "hotel 'being gay,'" as well as by making comments about "the type of people one can expect to encounter at the hotel." ECF 2, at 4–5 ¶ 14. Plaintiff also alleges that Mr. Powell's animus was demonstrated when made a comment that Plaintiff's quick change from shorts to pants was facilitated by "men in the elevator." *Id.* at 5 ¶ 15. Mr. Powell is further alleged to have claimed that Plaintiff's "pink bedazzled phone case" would secure Plaintiff's admission to

"gay parties." *Id.* ¶ 16.  Mr. Powell also allegedly made a remark to Plaintiff about "not getting into any sort of 'sexual trouble'" when Plaintiff went out for drinks with a colleague, and later expressed apparent surprise upon learning that the colleague was a female.  *Id.*  at 6 ¶ 19.

Mr. Powell's comments, as alleged, were distasteful and unquestionably offended Plaintiff. However, "[i]t is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." *Merritt*, 601 F.3d at 300.  It is here where Plaintiff's concession that he never discussed "his sexuality, sexual preferences, or gender identity with anyone at FBC," looms largest.  ECF 2, at 3.  Indeed, though Mr. Powell's alleged comments were explicitly targeted at individuals who identify as "gay," Plaintiff fails to allege in his Complaint either that he so identifies, or that the comments were directed specifically at Plaintiff because Mr. Powell was aware of Plaintiff's sexual orientation or Plaintiff's gender fluidity.  As such, Plaintiff has failed to plausibly assert facts that support a claim that Plaintiff was terminated *because* of his membership in a protected class. [10]  *See Alston v. Maryland Dep't of Health*, Civ. No. TDC-18-

---

[10] Courts employ a similar rationale in cases alleging other types of discrimination.  *See, e.g.*, *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003) ("It is difficult to see how an employer can be charged with discrimination on the basis of an employee's religion when he doesn't know the employee's religion[.]");  *O'Connor v. Northshore Int'l Ins. Servs.*, 61 F. App'x 722, 724 (1st Cir. 2003) (per curiam) ("[T]his court concluded that the Complaint failed to state a valid claim for religious discrimination because it did not allege that she was fired for a reason prohibited by Title VII, i.e., that she was fired because of her religion.  Indeed, the Complaint seems to admit that no one with decision-making authority had any knowledge of O'Connor's religious affiliation.");  *Robinson v. Adams*, 847 F.2d 1315, 1317 (9th Cir. 1987) (granting summary judgment on a race discrimination claim where "no genuine issue exists as to whether the application screeners were aware of [the plaintiff's] race");  *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996) ("In other cases involving personal attributes not obvious to the employer, courts have regularly held that the plaintiff cannot make out a prima facie case of discrimination unless he or she proves that the employer knew about the plaintiff's particular personal characteristic.");  *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the

2361, 2023 WL 2585532, at *6 (D. Md. Mar. 21, 2023) (granting summary judgment where a plaintiff failed to establish that the primary decision-maker had any knowledge of the plaintiff's sexual orientation), *aff'd sub nom. Alston v. Maryland Dep't of Health, Div. of Cost Acct. & Reimbursements Cent. Off.*, No. 23-1388, 2023 WL 5526593 (4th Cir. Aug. 28, 2023); *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 703 (8th Cir. 2012) ("In cases of discrimination based on a protected status that is not necessarily obvious, . . . the employee must show that the employer was sufficiently aware of the employee's status to have been capable of discriminating based on it."); *Dean v. Metro Staffing*, Civ. No. 18-07240, 2021 WL 1208972, at *6 (N.D. Ill. Mar. 29, 2021) ("[T]he Court cannot presume that Metro Staff unlawfully discriminated against Dean based on his sexual orientation when Fabela, who made the ultimate decision to terminate Dean, was not even aware that Dean was gay."); *Cheong v. Bank of E. Asia, Ltd.*, Civ. No. 22-9234, 2024 WL 1348498, at *9 (S.D.N.Y. Mar. 29, 2024) (granting a motion to dismiss on a claim alleging sexual orientation discrimination where "nothing indicates that [the decision-maker] was even aware of [the plaintiff's] sexual orientation."); *Romano v. Verisign, Inc.*, Civ. No. 22-00549AJTIDD, 2023 WL 1797890, at *5 (E.D. Va. Feb. 7, 2023) (granting summary judgment due to a lack of evidence that those involved in plaintiff's termination "had any relevant knowledge about her sexual orientation or protected activity."), *appeal dismissed*, No. 23-1224, 2023 WL 5573908 (4th Cir. June 1, 2023).

Ordinarily, one might reasonably assume that Plaintiff raised his sexual orientation and gender fluidity on June 29, 2022, when he allegedly "complained and protested to Mr. Powell . . . about the way he had been treated by Mr. Powell and Ms. Carroll and highlighted the shame and

---

disability. If it does not know of the disability, the employer is firing the employee 'because of' some other reason.").

anxiety Plaintiff was feeling." ECF 2, at 6. But again, Plaintiff explicitly pleads that "at no time," including his June 29, 2022, conversation with Mr. Powell and Ms. Carrol, "did Plaintiff discuss his sexuality, sexual preferences, or gender identity with anyone at FBC." ECF 2, at 3 ¶ 9. The Court is not permitted to speculate that this conversation, or the purported follow-up discussion occurring in early July, *id.* at 6–7 ¶ 21, provided notice to Mr. Powell that Plaintiff was a member of a protected class. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above a speculative level."). As such, Plaintiff's allegation that his firing was related to his sexual orientation or gender identity—an identity he admittedly hid from Defendant and never alleges Defendant discovered—amounts to a "'naked assertion[]' of wrongdoing" that fails "to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). To be clear, jokes and derogatory statements about a protected class are abhorrent and provide strong evidence that the declarant harbors prejudice and animosity toward that protected class. Even assuming as much, though, Plaintiff has failed to plead facts sufficient to connect those comments to his eventual termination and therefore has failed to plead facts sufficient to plausibly raise a claim of discrimination. Count 1 is dismissed.

### B. Count 2 survives.

The Court next considers whether the factual allegations in the complaint are sufficient to state a claim for retaliation. MFEPA provides that "[a]n employer may not discriminate or retaliate against any of its employees or applicants for employment . . . because the individual has . . . opposed any practice prohibited by [Section 20-606]." Md. Code Ann., State Gov't § 20-606 (f)(1). As with Count 1, and at the request of the parties, the Court will analyze this MFEPA claim using Title VII caselaw. Like MFEPA, Title VII of the Civil Rights Act prohibits status-based discrimination based on an employee's personal characteristics such as "race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e–2(a); *Nassar*, 570 U.S. at 346–47 (2013); *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018).  And like MFEPA, "Title VII also bars retaliation based on an employee's opposition to conduct made unlawful by Title VII, or for participating in a Title VII investigation or proceeding."  *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020) (citing 42 U.S.C. § 2000e–3; ("An employer may not . . . retaliate against any of its employees . . . because the individual has: (1) opposed any practice prohibited by this subtitle").  The purpose of Title VII's (and MFEPA's) prohibition on retaliation is to "protect employees who complain about real or perceived discrimination in the workplace from retaliation, which threatens to chill the willingness of employees to speak up."  *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (*citing Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1189 (10th Cir. 2002)).

Like a discrimination claim, a plaintiff need not establish a prima facie case of retaliation at the motion to dismiss stage, but still, "reference to the elements of a claim is helpful to assess whether the plaintiff has stated a plausible claim."  *Allgaier*, 2023 WL 2837336, at *8.  A plaintiff must demonstrate three elements to establish a prima facie retaliation case: "(1) that [they] engaged in a protected activity; (2) that [their] employer took an adverse employment action against [them]; and (3) that there was a causal link between the two events."  *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005).

### 1.    *Plaintiff has pled that he engaged in a protected activity.*

Defendant first asserts that Plaintiff has failed to adequately allege that he was engaged in a protected activity.  ECF 4, at 10.  The Court disagrees.  "[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation."  *Navy Fed. Credit Union*, 424 F.3d at 406; *see also Pitter v. Community Imaging Partners*, Inc., 735 F. Supp. 2d 379,

395 (D. Md. 2010).  Plaintiff does not claim he participated in a Title VII or MFEPA activity,[11] and instead alleges that he *opposed* discrimination against protected groups.

"An employer may not . . . take adverse employment action against an employee for opposing discriminatory practices in the workplace." *Staggers v. Becerra*, Civ. No. ELH-21-231, 2021 WL 5989212, at *20 (D. Md. Dec. 17, 2021) (citation omitted).  "To qualify as opposition activity[,] an employee need not engage in the formal process of adjudicating a discrimination claim." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (citation omitted).  "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Id.*

Defendant argues that Plaintiff has failed to plead that he engaged in a protected activity "because he never complained that he was being treated differently or harassed *because of* his sex, sexual orientation or gender identity." ECF 4-1, at 10 (emphasis in original).  As with its arguments related to Count 1, Defendant claims that because Plaintiff "never told anyone at FBC about his sexuality, sexual preference or gender identity, [] it follows that when he complained to FBC about how he was treated it could not have included any mention of his sexuality, sexual preference or gender identity." *Id.*  While it is true that Plaintiff's Complaint suggests that he did not mention his own membership in a protected class when complaining to Mr. Powell about alleged harassment, such a disclosure is not required to maintain a *retaliation* claim since "anti-retaliation provisions . . . provide[] protections not because of who people are, but because of what

---

[11] Participation in a Title VII process constitutes protected activity when the person allegedly facing retaliation "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under Title VII.  42 U.S.C. § 2000e–3(a).  There is no allegation that Plaintiff was retaliated against because of his participation in a Title VII (or MFEPA) investigation, activity, or hearing.

they do." [12]  *Wetzel v. Glen St. Andrew Living Cmty., LLC*, 901 F.3d 856, 868 (7th Cir. 2018); s*ee*

*also Wilcox v. Lyons*, 970 F.3d 452, 460 (4th Cir. 2020) ("The sex of the complainant is irrelevant,

because it is not the complainant's sex that motivated the employer's retaliatory adverse action.").

"Instead, for an employee's activity to constitute protected 'opposition,' [they] must show (1) that

[they] reasonably believed that the employment action [they] opposed constituted a Title VII

violation, and (2) that [their] conduct in opposition was reasonable." *Netter v. Barnes*, 908 F.3d

932, 937–38 (4th Cir. 2018) (citations omitted).

   "[T]he threshold for oppositional conduct is not onerous." *DeMasters v. Carilion Clinic*,

796 F.3d 409, 417 (4th Cir. 2015).  Due to the "ordinary meaning" of the term "oppose," the

Supreme Court has found that "[w]hen an employee communicates to her employer a belief that

the employer has engaged in . . . a form of employment discrimination, that communication

virtually always constitutes the employee's *opposition* to the activity." *Id.* (citing *Crawford v.*

*Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009) (additional citations

omitted) (emphasis in *Crawford*).   Moreover, the alleged Title VII violation complained of "may

be complete, or it may be in progress." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282

(4th Cir. 2015) (citing *Navy Fed. Credit Union*, 424 F.3d at 406).

---

[12] Title VII's anti-retaliation provisions protect a plaintiff who suffers consequences for opposing discriminatory acts even if the plaintiff is not a member of the protected class whose discrimination the plaintiff opposed.  *See Peters v. Jenney*, 327 F.3d 307, 317 (4th Cir. 2003) (affirming that Supreme Court precedent supports the "proposition that a prohibition on discrimination should be judicially construed to include an implicit prohibition on retaliation against those who oppose the prohibited discrimination") (citing *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969)); *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 214 (4th Cir. 2007) ("Under [controlling] precedent[], plaintiffs . . . can challenge as discriminatory actions that were taken against them for reporting unlawful discrimination, even if the plaintiffs were not subject to discrimination based upon their own race, gender, or similar protected status.").

Plaintiff alleges that employees of Defendant, including Mr. Powell, made a number of offensive jokes and derogatory comments targeting protected groups.  ECF 2, at 3–6 ¶¶ 10–20. Plaintiff complained about these comments and jokes on at least two occasions, allegedly prompting at least one response, bolstering the claim that the allegations raised by Plaintiff reasonably related to Title VII violations.  ECF 2, at 6 ¶ 18, 7 ¶ 21 (alleging that Mr. Powell affirmed that he had "addressed Plaintiff's concerns" about perceived harassment).  While Plaintiff could have provided more detail about what he complained of in late June and early July, at minimum, he alleges that he voiced opposition to a supervisor about perceived harassment in the form of comments, jokes, and demeaning behavior targeting protected classes, the precise type of conduct that Title VII is designed to prevent.  *Laurent-Workman*, 54 F.4th at 212.  Thus, as to whether his complaints of harassment constituted protected activity, Plaintiff succeeds in "nudging [the] claim[] across the line from conceivable to plausible."  *Id.* at 210 (citing *Hately v. Watts*, 917 F.3d 770, 782 (4th Cir. 2019)).

The cases cited by Defendant do not call for a different result.  In *Rodriguez v. Cellco Partnership*, the Plaintiff completely failed to allege that she had engaged in a protected activity because her complaints to management did not include any "claims of race or national origin discrimination" and instead amounted to complaints about "unfair treatment."  Civ. No. WDQ-11-3299, 2012 WL 2904809, at *4 (D. Md. July 13, 2012).  Such is not the case here where Plaintiff does far more than merely complain vaguely of unfair treatment.  Similarly, the complaint in *Yomi v. DeJoy* asserted only that the plaintiff had been fired after he "complained . . . about [a] bad and unfair Mid-Year Evaluation . . . ."  No. BPG-21-2709, 2023 WL 2306961, at *4 (D. Md. Mar. 1, 2023).  Since the *Yomi* plaintiff failed to allege "that his objections to his performance review arose from [an] alleged violation of Title VII," the retaliation claim was rightly dismissed.  *Id.*  Here,

Plaintiff has successfully pleaded that he voiced concerns about behavior he reasonably believed to be unlawful, namely a series of jokes and negative comments about sexual orientation and gender identity.  Given the low bar at this early stage of litigation, Plaintiff has successfully pled that he opposed a practice banned by MFEPA.

> 2.   *Plaintiff has pled that his termination was causally connected to his protected activity.*

Defendant also appears to challenge that the protected activity was causally connected to the adverse action, which is a requirement of any retaliation claim.  *Strothers*, 895 F.3d at 335.  A causal connection exists when an employer takes a particular adverse action "because the plaintiff engaged in a protected activity." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)).  "Causation can be shown in two ways: by 'show[ing] that the adverse act bears sufficient temporal proximity to the protected activity,' or by showing 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or a combination of the two." *Laurent-Workman*, 54 F.4th at 218–19 (*citing Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)).

An employee may establish prima facie causation simply by showing that: "(1) the employer either understood or should have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity." *Strothers*, 895 F.3d at 336 (citing *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994)); *see also Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989).  "[E]stablishing a causal relationship at the prima facie stage is not an onerous burden." *Strothers*, 895 F.3d at 335 (internal citation and quotation marks omitted); *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012) ("[V]ery little evidence of a causal connection is required to establish a prima facie case of

retaliation." (citation omitted)).  Courts are more likely to find a causal connection when little to no time has elapsed between a plaintiff engaging in a protected action and a plaintiff experiencing an adverse employment action.  *Compare Strothers*, 895 F.3d at 336 (holding that a time lapse of one day between notification of intent to file a grievance and the employee's termination satisfied the causal connection requirement at the prima facie stage) *and Carter*, 33 F.3d at 460 (finding prima facie causation where employer fired plaintiff four months after discrimination complaint was filed), *with Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (holding that a three year lapse between protected activity and adverse employment action was too lengthy to establish a causal nexus) *and Clark v. Chrysler Corp.*, 673 F.2d 921, 930 (7th Cir. 1982) (holding that two-year lapse negated inference of causation).

Plaintiff has unquestionably alleged the requisite awareness that he was engaging in a protected act since Plaintiff complained directly to Mr. Powell about the alleged harassment, and Mr. Powell subsequently terminated Plaintiff.  Similarly, Plaintiff has alleged that roughly one month elapsed between his complaints to Mr. Powell and Plaintiff's termination, a short lapse in time that the Fourth Circuit previously stated "tends to show causation."  *Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 253 (4th Cir. 2015); *see also Silva v. Bowie State Univ.*, 172 F. App'x 476, 478 (4th Cir. 2006) ("[W]e find that the ten-week lapse of time sufficiently established a prima facie case of retaliation.").  Having successfully pled a cause of action for retaliation, the motion to dismiss Count 2 is denied.

### C.    Count 3 is dismissed.

Plaintiff's final claim alleges a hostile work environment.  ECF 2, at 8–9 ¶¶ 34–38.  A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Boyer-Liberto v.*

*Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To raise a hostile work environment claim under Title VII, "a plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the plaintiff's . . . [protected class]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration and internal quotation marks omitted))

      Plaintiff's claim falters at the third step, if not sooner.[13]  The third element mandating that the conduct at issue is "severe or pervasive" requires that the conduct create both an objectively and subjectively hostile work environment.  *Harris*, 510 U.S. at 21–22 (explaining that this standard is a "middle path between making any conduct actionable that is merely offensive and requiring the conduct to cause a tangible psychological injury"); *id.* at 22 (noting "[t]his is not, and by its nature cannot be, a mathematically precise test").  When evaluating hostile work environment claims, courts in the Fourth Circuit consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli*, 648 F.3d at 222.

      "To be sure, the severe and pervasive element sets a high bar, such that the law tolerates a level of poor conduct by an employer that is at odds with the courtesy and respect that an employee

---

[13] As noted, Plaintiff has failed to specifically allege membership in the protected class that was primarily targeted by the conduct alleged.  Though Plaintiff has alleged that the comments were unwelcome, the inquiry might still end at the second step because Plaintiff cannot establish that the comments were "based on the plaintiff's . . . [protected class]." *Okoli*, 648 F.3d at 220.  However, the court need not address whether dismissal is warranted on this point since, for reasons stated later in this opinion, Plaintiff has failed to plead that the comments were "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment." *Id.*

might not unreasonably expect." *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 254 (D. Md. 2023). "It is established that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Singleton v. Dep't of Corr. Educ.*, 115 F. App'x 119, 122 (4th Cir. 2004) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 788 (2004)); *see also Anderson v. G.D.C., Inc.*, 281 F.3d 452, 459 (4th Cir. 2002) (noting that Title VII "is not designed to purge the workplace of vulgarity"). Stated plainly, "Title VII is not intended to serve as a workplace civility code." *Singleton*, 115 F. App'x at 122 (quoting *Faragher*, 524 U.S. at 788).

Though Plaintiff has sufficiently pleaded that the comments were subjectively hostile, his allegations are insufficient to state a claim that the comments were objectively severe or pervasive. The conduct complained of occurred largely over one month, between late June and July of 2022,[14] which is relatively infrequent given that Plaintiff worked at FBC for nearly a year.[15] *Compare Singleton*, 115 F. App'x at 122 (finding six months of flirtation and inappropriate comments were not objectively severe or pervasive) *with Hernandez*, 719 F. App'x at 187–88 (finding stalking and unwanted flirtations daily for over a year was sufficient to survive summary judgment). The alleged conduct at issue here was not physically threatening. Though

---

[14] Two additional comments, one regarding weight loss, ECF 2, at 3 ¶ 10, and another criticizing Plaintiff's bright clothing, *id.* ¶ 11, while embarrassing to Plaintiff, were not comments based on membership in a protected class and provide little additional evidence of the requisite severity necessary to allege an abusive work environment.

[15] Dr. Kiver notes in his response that "he began his gender transition in 2022," ECF 9, at 14, likely to explain why there are no allegations of derogatory comments based on his gender identity during the time from his hiring of August of 2021 until June of 2022. The approximate dates that Plaintiff began his gender transition are not included in the Complaint and thus cannot be considered by the Court. *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation and internal quotation marks omitted)).

unquestionably offensive, the comments bear a closer resemblance to "[r]ude treatment by [coworkers and] callous behavior by [one's] superiors . . . [that] are not actionable under Title VII," *Faulkenberry*, 670 F. Supp. 3d at  254 (quoting *Milo v. CyberCore Techs., Inc.*, No. RDB-18-3145, 2019 WL 4447400, at *5 (D. Md. Sep. 17, 2019)), than they do to "harassment of the most demeaning, degrading, and damaging sort" that constitutes a hostile work environment, *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  Far more extreme conduct has failed to reach the level of "humiliation" required to establish a hostile work environment.  *See Faulkenberry*, 670 F. Supp. 3d, at 255–56 (holding that allegations that the plaintiff, a transgender woman, was subjected to comments about her clothing, rude names, and misgendering were insufficient to state a claim for hostile work environment, noting "far worse is required"); *Hanson-Hodge v. Kijakazi*, Civ. No. 22-2818-BAH, 2023 WL 8357322, at *19 (D. Md. Dec. 1, 2023) (finding that an employee being removed from work by two security guards failed to establish the requisite humiliation to constitute a hostile work environment.).  Further, Plaintiff has failed to plausibly allege a factual basis supporting his bare legal conclusion that the comments unreasonably interfered with his work performance.  *Okoli*, 648 F.3d at 222.  Plaintiff's allegations, even assumed to be true, fail to "clear [the] high bar" required "to satisfy the severe or pervasive test."  *Sunbelt Rentals, Inc.*, 521 F.3d at 315.  Count 3 is dismissed.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to dismiss, ECF 4, is **GRANTED in part and DENIED in part**.  Counts 1 and 3 of Plaintiff's corrected complaint are DISMISSED without prejudice.  Count 2 remains.   A separate implementing Order will issue.

Dated: <u>July 16, 2024</u>                                          _____/s/_____

Brendan A. Hurson
United States District Judge