IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILLIP A. KIVER, PH.D,
    *Plaintiff*,

v.

                               Case No. 23-cv-03398-ABA

FEDERAL BUSINESS COUNSEL, INC.,
    *Defendant*

## MEMORANDUM OPINION

On August 4, 2022, Plaintiff Dr. Phillip Kiver was terminated from his position as an independent contractor at Defendant Federal Business Council, Inc. ("FBC"). Plaintiff has sued, alleging that FBC violated the retaliation provision of the Maryland Fair Employment Practices Act ("MFEPA"). The parties have completed discovery, and FBC has filed a motion for summary judgment. For the reasons that follow, the Court will grant FBC's motion, and judgment will be entered in its favor.

### I.    Factual Background

Because FBC has moved for summary judgment, the Court recites the facts in the light most favorable to Plaintiff, Dr. Kiver. *See Sedar v. Reston Town Ctr. Prop.*, *LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

### A. Alleged Discrimination

FBC specializes in producing meetings, conferences, and trade show events for federal agencies. *See* ECF No. 2 ¶ 3. On August 6, 2021, FBC hired Plaintiff as an at-will

independent contractor. ECF No. 39-2 at 6–10.[1]

Plaintiff alleges that his[2] "sexuality, appearance, and gender identity are fluid, and during his employment with FBC, [he] began growing his hair, losing weight, and eating an estrogen-laden diet, to make his appearance more feminine." ECF No. 2 ¶ 9.[3] However, Plaintiff alleges that he "at no time" discussed his sexuality, sexual preferences, or gender identity with anyone at FBC. *Id.*; ECF No. 39-2 at 1 (¶ 4).

Plaintiff alleges multiple instances of discriminatory behavior carried out by his superiors and co-workers. For example, he alleges that on May 5, 2022, FBC's CEO David Powell remarked that Plaintiff had "lost a lot of weight" in a tone that "caused Dr. Kiver to feel embarrassed and self-conscious." ECF No. 2 ¶ 10. On June 15, 2022, in response to Plaintiff's bright-colored outfit, Bob Jeffers, Plaintiff's supervisor, commented, "I can see you a mile away, we need to talk about your wardrobe." *Id.* ¶ 11. Plaintiff alleges that, later that day, he showed Mr. Jeffers a picture of his handgun,

---

[1] References to page numbers of filings (not transcript pages) herein refer to the ECF pagination in the header of the parties' filings. Those page numbers do not necessarily align with the documents' original page numbers.

[2] Because Dr. Kiver refers to himself using male pronouns, the Court will do the same.

[3] This case is at the dispositive motions stage. A Plaintiff cannot survive summary judgment by relying on allegations, but rather must come forward with evidence, such as testimony, documents, affidavits, etc. *See* Fed. R. Civ. P. 56(c). Plaintiffs are not relieved of that burden by representing themselves. *See Symeonidis v. Paxton Cap. Grp., Inc.*, 220 F. Supp. 2d 478, 480 (D. Md. 2002) ("Pro se pleadings . . . must still set forth facts sufficient to withstand summary judgment.") (collecting cases); *accord Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (noting that Plaintiff's *pro se* status "does not relieve [him] of his duty to meet the requirements necessary to defeat a motion for summary judgment."). Here, the Court draws in part on Plaintiff's complaint simply for background purposes, not because those allegations constitute evidence but because, for the reasons discussed below, even if Dr. Kiver had backed up these allegations with evidence, FBC would be entitled to summary judgment.

which had a purple upper receiver, to which Jeffers replied, "That would be great to carry in the gay pride parade outside." *Id.* ¶ 12. Dr. Kiver also alleges that, during a work trip to Hawaii in June 2022 where the team stayed at a hotel "well known for its famous gay bar," Mr. Powell and other co-workers made comments that Dr. Kiver considered derogatory, including about the color of his cell phone. *Id.* ¶¶ 14–17.

### B. The Photograph on Plaintiff's Phone

During the Hawaii trip, FBC employees, including HR Manager Cindy Carroll, noticed that Plaintiff's cell phone lock screen displayed a picture of a topless woman. ECF No. 39-2 at 2 (¶¶ 8–9).[4] This photograph would appear whenever Plaintiff received a notification, including when he was around co-workers or potential business contacts. *Id.* (¶ 11). While Plaintiff, Mr. Powell, and Ms. Carroll were traveling together, Ms. Carroll asked Plaintiff why that photograph was on his phone. ECF No. 39-3 at 3 (Tr. 28:2–28:14). Plaintiff took issue with this question because the phone was for personal use, and not a company phone. *Id.* at 3–4 (Tr. 28:12–29:9).

Mr. Powell asked Plaintiff to remove the photograph from his phone because "it could inadvertently be displayed" while Plaintiff was representing the company. *Id.* at 4 (Tr. 29:15–29:21). Plaintiff obliged because he "saw the wisdom in [Powell's] request." *Id.* at 5 (Tr. 30:19–30:22). But he took issue with Mr. Powell asking to see the photograph during this conversation because the photograph was of his girlfriend. *Id.* (Tr. 29:1–29:19).

---

[4] FBC supports its motion for summary judgment with evidence, specifically an affidavit from CEO Powell (ECF No. 39-2 at 1–5), the independent contractor agreement between FBC and Dr. Kiver (*id.* at 6–10), email correspondence (*id.* at 11–15), the August 5, 2022 letter terminating Dr. Kiver's contract (*id.* at 16), and Dr. Kiver's deposition testimony (ECF No. 39-3).

The parties dispute whether Ms. Carroll also asked Plaintiff to remove the photograph. *Compare id.* at 2 (Tr. 27:10–27:21) (Plaintiff testifying that Ms. Carroll did not ask him to remove the photograph), *with* ECF No. 39-2 at 2 (¶ 14) ("Ms. Carroll informed me that she also requested that Kiver remove the photo."). But as discussed below, that dispute is immaterial to this Court's disposition of the case.

### C. Alleged Complaints

Plaintiff alleges that on June 29, 2022, in a private conversation with Mr. Powell, he "protested about the way he had been treated by Mr. Powell and Ms. Carroll and highlighted the shame and anxiety [he] was feeling as a result." ECF No. 2 ¶ 18. The evidence of that conversation in the record comes from Mr. Powell's affidavit and Dr. Kiver's deposition. Mr. Powell avers as follows:

> 15. While driving to an event at Joint Base Pearl Hickam, Kiver complained to me about Ms. Carroll telling him to remove the inappropriate photo on his phone.
>
> 16. Kiver told me that it was his personal phone, and he was upset that she had raised the issue with him in front of others.
>
> 17. I told Kiver during this conversation that the photo was highly inappropriate and Ms. Carroll was right to tell him to remove it.
>
> 18. Kiver did not raise other concerns with me during this conversation. He only expressed concerns about this phone incident and how Ms. Carroll had treated him sternly when she asked to remove it.

ECF No. 39-2 at 2–3 (¶¶ 15–18).

Dr. Kiver's version is nearly identical, in all material respects. ECF No. 39-3 at 4–5. He testified that when Mr. Powell and he were driving to Pearl Harbor, Mr. Powell requested that Mr. Kiver remove the photo from the lock screen of his phone:

4

> He said You need to remove this image from your phone. I said Why? This is a personal phone. He's like Well, you represent the company and you could be talking to someone and it could inadvertently be displayed and I saw the wisdom in that and then [Mr. Powell] said I would like to see it first because he had not yet seen it was the implication that I took from his remark to which I was aghast. It's one thing for the owner of a company as a businessman to say to another business professional, myself hey, I think we should make the decision. Let's just take the photo off your phone but to ask for it?

*Id.* at 4-5 (29:16–30:7).

There is no evidence in the record that during that conversation, or at any other time, Dr. Kiver made any complaints to Mr. Powell or anyone else at FBC that he had been discriminated against on the basis of his sexuality or any other protected status. The only indication of any complaint is Dr. Kiver's allegation in the original complaint that he had complained about "harassing treatment" during the Hawaii trip. ECF No. 2 ¶ 21.

### D. The Events Leading to Plaintiff's Termination

On July 6, 2022, Jay Elliott, a business contact of FBC and Plaintiff's former employer, informed Mr. Powell that Plaintiff had sent derogatory emails about Mr. Elliott to Elliott's customers. ECF No. 39-2 at 3 (¶¶ 22, 25, 26); *see also* ECF No. 39-3 at 6 (Tr. 63:4–63:18). Mr. Powell advised Plaintiff that sending these emails was inappropriate and that "the next time [Powell] became aware of something like this, FBC could no longer work with him." ECF No. 39-2 at 3 (¶¶ 25, 27).

On August 4, 2022, Mr. Elliott called and emailed Mr. Powell to share that Plaintiff had sent additional derogatory emails about Mr. Elliott. *Id.* at 4 (¶¶ 28–29) and

5

11–15 (email exhibits). After this, Mr. Powell decided to terminate Plaintiff's contract with FBC. *See id.* at 4 (¶¶ 30–33) and 16 (termination letter).

## II.    Procedural History

After exhausting his administrative remedies, Plaintiff filed this action in the Circuit Court for Howard County. ECF No. 2. The Complaint asserted three causes of action under the MFEPA: (1) sex, sexual orientation, and gender identity discrimination; (2) retaliation; and 3) hostile work environment. *Id.* On December 15, 2023, FBC removed the action to this Court, alleging diversity jurisdiction under 28 U.S.C. § 1332(a). ECF No. 1 at 2.

FBC filed a motion to dismiss, ECF No. 4, which Judge Hurson granted in part and denied in part. *Kiver v. Fed. Bus. Counsel, Inc.*, Case No. 23-cv-3398-BAH, 2024 WL 3424059, at *1 (D. Md. July 16, 2024), ECF No. 14 at 1. Judge Hurson dismissed Count 1 because Plaintiff failed to plead that he was terminated because of his protected class. ECF No. 14 at 9. Judge Hurson noted that, "[o]rdinarily, one might reasonably assume that Plaintiff raised his sexual orientation and gender fluidity on June 29, 2022, when he allegedly 'complained and protested to Mr. Powell . . . about the way he had been treated.'" *Id.* at 15 (citing ECF No. 2 ¶ 18). But because Plaintiff, "at no time," discussed "his sexuality, sexual preferences or gender identity with anyone at FBC," *id.* at 15–16 (quoting ECF No. 2 ¶ 4), Plaintiff had not plausibly alleged that he was dismissed because of his gender fluidity. *Id.*

Judge Hurson denied the motion to dismiss the retaliation claim. *Id.* at 16. He reasoned that the complaint adequately alleged that Plaintiff had engaged in oppositional protected activity by allegedly complaining about "offensive jokes and derogatory comments targeting protected groups." *Id.* at 20. And though Plaintiff pled

that he did not mention his gender fluidity to FBC, Plaintiff's retaliation claim could proceed because the MFEPA's anti-retaliation provisions protect plaintiffs when they oppose discriminatory conduct targeted at individuals in other protected classes. *See id.* at 19 n. 12 (collecting cases). Judge Hurson acknowledged that Plaintiff "could have provided more detail about what he complained of in late June and early July," but concluded that the Complaint supported a reasonable inference that he voiced opposition about alleged harassment. *Id.* at 20. Judge Hurson also held that, because of the short amount of time that elapsed between Plaintiff's protected activity and his termination, for pleading purposes he was able to establish a causal connection, and thus, a *prima facie* case sufficient for Count 2 to survive the motion to dismiss. *Id.* at 22. Judge Hurson dismissed Count 3 (Hostile Work Environment) because the conduct that Plaintiff faced was not objectively severe or pervasive. *Id.* at 24.

The parties proceeded to discovery on the retaliation claim. After the close of discovery, FBC filed a timely motion for summary judgment. ECF No. 39. *See also* ECF No. 36. Plaintiff filed a brief in opposition; however, it was not responsive to FBC's arguments. *See* ECF No. 40.[5]

### III.   Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party meets its burden when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and

---

[5] Plaintiff was represented by counsel when he filed this action. Counsel later withdrew from the representation. *See* ECF Nos. 11 (motion to withdraw), 12 (order granting motion). Since May 2024, Plaintiff has been proceeding *pro se.*

when the nonmovant bears "the burden of proof at trial." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986). If the non-moving party fails to confront the motion with

"sufficient evidence . . . for a jury to return a verdict for that party," the movant is

entitled to summary judgment. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 249

(1986); *Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial.");

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 ("When the

moving party has carried its burden under Rule 56(c), its opponent must do more than

simply show that there is some metaphysical doubt as to the material facts."). In making

this determination, the Court views all facts, and all reasonable inferences drawn from

those facts, in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

587–88.

## IV. Discussion

The MFEPA, like Title VII of the Civil Rights Act of 1964, its federal counterpart,[6]

prohibits an employer from "retaliat[ing] against any of its employees" that have either

"opposed any practice prohibited by" or "participated in an investigation proceeding or

hearing" under section 20-606 of the MFEPA. Md. Code Ann., State Gov't § 20-606 (f).

In relevant part, section 20-606 prohibits employers from discriminating against any

individual because of that individual's "sex . . . , sexual orientation, [or] gender identity."

---

[6] Though Plaintiff has only asserted state law claims under the MFEPA, the Maryland
"courts traditionally seek guidance from federal cases in interpreting [the MFEPA]."
*Haas v. Lockheed Martin Corp.*, 396 Md. 469, 482 (2007). *See also Williams v. Silver
Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 421 n.1 (D. Md. 2015) ("FEPA is the
state law analogue of Title VII and its interpretation is guided by federal cases
interpreting Title VII."). Because the parties heavily rely on Title VII case law in their
filings, the Court will also do so here.

*Id.* § 20-606(a)(1)(i). The MFEPA's retaliation provisions apply equally to independent contractors. Md. Code Ann., State Gov't § 20-601(c)(1)(ii).

Maryland courts apply the *McDonnell Douglas* burden-shifting framework in resolving MFEPA retaliation claims. *See Dobkin v. Univ. of Balt. School of Law*, 210 Md. App. 580, 592–93 (2013) (collecting cases). To survive summary judgment, a plaintiff has the initial burden to establish a *prima facie* case of retaliation by demonstrating that (1) he engaged in a protected activity, (2) the employer acted adversely against the plaintiff, and (3) the protected activity was causally connected to the employer's adverse action. *Okoli v. City of Balt.*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted). If the plaintiff meets that initial burden, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for the adverse employment action. *See, e.g.*, *Md. Dep't of Health v. Best*, 264 Md. App. 181, 204 (2024) (citations omitted). If the employer meets that burden, "the complainant then must prove, by a preponderance of the evidence, that the employer's stated reason for the termination was a pretext." *State Comm'n on Human Relations v. Kaydon Ring & Seal, Inc.*, 149 Md. App. 666, 676–77 (2003) (collecting cases).

FBC makes three arguments for summary judgment on Plaintiff's sole remaining count, for retaliation. First, FBC argues that Plaintiff cannot establish a *prima facie* case of retaliation because there is no evidence that Plaintiff engaged in protected activity. ECF No. 39-1 at 9. Second, FBC contends that even if Plaintiff engaged in protected activity, he cannot establish a *prima facie* case because there was no "causal connection between the alleged protected activity and Kiver's termination." *Id.* at 13. And third, under the *McDonnell Douglas* framework, FBC argues that Plaintiff's misconduct

9

provided legitimate non-retaliatory reasons for his termination and that there is no evidence that these reasons were pretextual. *Id*. at 16.

### A. Plaintiff Cannot Establish a *Prima Facie* Case Because There is No Record Evidence that He Engaged in a Protected Activity

The first step in establishing a *prima facie* retaliation case is proving that the plaintiff engaged in a protected activity. *See, e.g.*, *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009). This can occur when an employee has "opposed a practice prohibited by" or "participated in an investigation, proceeding, or hearing" under Title 20 of the MFEPA. Md. Code Ann., State Gov't, § 20-606(f); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) ("[I]n the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation."). Plaintiff does not claim that he participated in any pertinent investigation or proceeding. *See Kiver*, 2024 WL 3424059, at *8. Thus, for Plaintiff to have engaged in protected activity, he must have engaged in opposition.

"[F]or an employee's activity to constitute protected 'opposition,' [he] must show (1) that [he] reasonably believed that the employment action [he] opposed constituted a Title VII [or MFEPA] violation, and (2) that [his] conduct in opposition was reasonable." *Netter v. Barnes*, 908 F.3d 932, 937–38 (4th Cir. 2018) (citations omitted). "[T]he threshold for oppositional conduct is not onerous." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015). Thus, when an employee "communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." *Crawford*, 555 U.S. at 276 (emphasis in original).

10

But "[n]ot all employee complaints are protected by Title VII's [or MFEPA's] retaliation provision." *McIver v. Bridgestone Americas, Inc.*, 42 F.4th 398, 411 (4th Cir. 2022). "[F]or an employee's complaint to be a protected activity, the complaint must concern the employer's allegedly *discriminatory* conduct against a protected class." *Best*, 264 Md. App. at 204 (citing *Edgewood Mgmt. Corp v. Jackson*, 212 Md. App. 177, 201–02 (2013)) (emphasis added); *see also McIver*, 42 F.4th at 412 ("[I]f [the plaintiff] fails to tie complaints about workplace conduct to [a] protected status, the employer could not have retaliated for engaging in a protected activity.").

Here, Plaintiff's retaliation claim fails because there is no evidence in the record that he complained to Mr. Powell about discrimination on the basis of a protected characteristic. Though the Complaint alleges that "Plaintiff protested about the way he had been treated by Mr. Powell and Ms. Carroll," ECF No. 2 ¶ 18, Plaintiff has put forth no evidence in the record to establish that this complaint referred to any alleged discrimination on the basis of gender, gender identity, or other protected characteristic. Even at the pleadings stage, Judge Hurson noted that Plaintiff's Complaint "could have provided more detail about what he complained of in late June and early July." *See Kiver*, 2024 WL 3424059, at *10. And now, with the benefit of discovery, FBC has put forth direct evidence establishing that the complaint solely regarded the inquiries into the photograph on his phone. *See* ECF No. 39-2 at 2 (¶¶ 15–18). Thus, to avoid summary judgment, Plaintiff would have to provide evidence to create a genuine dispute as to whether this is the case. *See Matsushita*, 475 U.S. at 586 ("When the nonmoving party has carried its burden . . . , the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'") (quoting Fed. R. Civ. P. 56 (e)) (emphasis in original).

Plaintiff has not done so. Not only does Plaintiff fail to oppose FBC's motion with any sworn testimony or other documentary evidence, *see* Fed. R. Civ. P. 56(c), but he also does not appear to contend in opposition that his complaint to Mr. Powell, in fact, asserted complaints about discrimination. *See* ECF No. 40.

Although Plaintiff raises a dispute as to whether Ms. Carroll requested that he remove the photograph from his phone, *see* ECF No. 39-3 at 2 (Tr. 27:10–27:21), he also testified that the phone incident upset him because Ms. Carroll asked questions that he considered intrusive about why the photograph was on his phone and because Mr. Powell asked to see the photograph before requesting that Plaintiff remove it. *See id.* at 3–4 (Tr. 28:12–29:19). Thus, Plaintiff's agitation with the phone incident only confirms that the complaint "only expressed concerns about this phone incident." ECF No. 39-2 at 3 (¶ 18). But most importantly, because Plaintiff has not rebutted this evidence, no reasonable jury could find that Plaintiff complained about anything but the photograph on his phone. Thus, Plaintiff cannot establish that he engaged in protected oppositional activity, and FBC is entitled to summary judgment on this basis.

## B. Plaintiff's claim also fails because FBC had legitimate, nondiscriminatory reasons for the termination that were not pretextual

In addition to the absence of evidence of a protected activity, FBC is also entitled to summary judgment because no reasonable jury could conclude that FBC lacked legitimate, nondiscriminatory reasons for the termination or that the proffered legitimate reasons were pretextual.

As noted, under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), once a plaintiff makes out a *prima facie* case, the burden shifts to the employer to come forward with evidence that there was a

legitimate, nondiscriminatory reason for the adverse employment action. *See Best*, 264

Md. App. at 225 (citation omitted). A legitimate reason is not necessarily a wise reason,

but rather any reason that does not discriminate. *See DeJarnette v. Corning, Inc.*, 133

F.3d 293, 299 (4th Cir. 1998) ("[I]t is not our province to decide whether the reason was

wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's

termination.") (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406,

410 (7th Cir. 1997)). If the employer meets that burden, then the plaintiff "resumes the

burden of persuading the factfinder that the employer's proffered explanation is merely

a pretext for discrimination." *Best*, 264 Md. App. at 225 (quoting *Sharif v. United

Airlines, Inc.*, 841 F.3d 199, 203 (4th Cir. 2016) (internal quotations omitted)). To

demonstrate pretext, the plaintiff must not only establish that the legitimate

nondiscriminatory reasons were false, *see Jiminez v. Mary Wash. Coll.*, 57 F.3d 369,

377–78 (4th Cir. 1993) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)),

but also that the plaintiff's protected activity was the "but-for" cause of the termination.

*See Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 252 (4th Cir. 2015).

Here, the undisputed evidence in the record demonstrates that FBC had

legitimate, nondiscriminatory reasons for terminating Plaintiff's employment based on

Plaintiff's derogatory emails about one of FBC's business contacts. ECF No. 39-2 at 3

(¶ 25). *See Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 175 (4th Cir. 1997)

(noting that an employee's "inappropriate conduct" provides a legitimate,

nondiscriminatory reason for termination). Moreover, by damaging a relationship with

a business contact, these emails could harm FBC's economic interests, which would also

provide a legitimate reason for termination. *See Bello v. Bank of Am. Corp.*, 320 F.

Supp. 2d 341, 350 (D. Md. 2004) ("The bank's decision to terminate Bello's employment

for economic reasons is a legitimate non-discriminatory reason.") (citing *Mereish v. Walker*, 359 F.3d 330, 335 (4th Cir. 2004)).

And Plaintiff offers no evidence to suggest that these legitimate reasons were pretextual. Though Plaintiff testified that his termination letter, which confirmed that he was terminated "due to recent issues and concerns," ECF No. 39-2 at 16, was a "load of crap," ECF No. 36-3 at 6 (Tr. 63:1–63:3), Plaintiff offers no evidence that FPC's concerns about his derogatory emails to Mr. Elliott's customers were a pretext. In Plaintiff's deposition, when asked what other facts support his claim that his "termination was the result of [his] complaints . . . as opposed to the" emails to Mr. Elliott's customers, Plaintiff solely testified that FBC's "behavior became increasingly aggressive and illegal" from the Hawaii trip onward. *Id.* at 6–7 (Tr. 63:19–64:11). Not only does this testimony, and the record as a whole, fail to rebut Defendant's legitimate nondiscriminatory reasons for termination, but it also does not constitute evidence from which a reasonable jury could find that Plaintiff would not have been terminated but for his alleged complaints. *See Foster*, 787 F.3d at 252. Thus, there is no evidence from which a reasonable factfinder could conclude that retaliation for protected activity was the real reason FPC terminated Plaintiff.

Accordingly, in addition to failing to establish that he engaged in protected activity, Plaintiff's claim would nonetheless fail under the *McDonnell Douglas* framework.[7]

---

[7] Because the Court concludes that Plaintiff did not engage in protected activity, and that the undisputed record establishes that FBC had legitimate, nondiscriminatory reasons for the termination that were not pretextual, the Court need not reach FBC's other argument, that there was no causal connection between the alleged protected activity and Plaintiff's termination.

## V.    CONCLUSION

For these reasons, there is no genuine dispute as to any material fact that would entitle Plaintiff to proceed with his MFEPA retaliation claim. Accordingly, this Court will grant summary judgment in favor of Defendant FBC. A separate order follows.


Date:  August 13, 2025                                        /s/
                                                  _____
                                                  Adam B. Abelson
                                                  United States District Judge